The opinion of the Court was delivered by
Poché, J.
A statement of the main facts underlying this complicated litigation, will facilitate a proper understanding of the issues presented in the pleadings.
In January, 1873, plaintiff, Broadwell, placed L. N. Lane in possession of a plantation which he owned in the Parish of Natchitoches, under the following agreement or stipulation :
“ Natchitoches Parish,
“ Pré Au.v Olere, January 1, 1873.
“ I have this day bargained, sold and delivered to Lafayette N. Lane, the plantation lately occupied by Thomas Hunter, and better known as the Pré Aux Clerc place, with twelve mules, two wagons, such farming utensils as may be on the place, corn in crib, etc.
“ Pities, to said property (real and personal) to be made at our convenience, as per our private agreement.
(Signed) J. P. Broadwell.”
The private agreement referred to in. the instrument, was that Broadwell should facilitate Lane in the cultivation of the plantation, by making the necessary advances, in consideration of which, the crops of cotton wore to be disposed of under Broadwell’s control, the proceeds to be applied, first, to the reimbursement of his advances, and next, towards the payment of the purchase price; that after thus paying $4,000 to $5,000, in a reasonable time, and assuming- the payment of the balance of the purchase price, which was $20,000, Lane was to receive complete titles to the property described in the instrument.
Under this agreement, Lane took possession of, and cultivated the plantation for seven years, during- which he paid nothing on the purchase price, and at the end of. which he was heavily involved in debt to Broadwell and to numerous other creditors.
In February, 1830, eleven of his creditors brought suits against him, and in each suit attachments w*ere issued, resulting in the seizure of some ten mules, some horses, and other movable property situated oh •the plantation occupied by Laue.
Broadwell intervened in each of those suits, for the purpose of defeating the attachments; in some suits he claimed the property attached as his, and in others he merely alleged fraud and collusion between Lane and the attaching creditors.
• In several cases his intervention was dismissed on exception, in the remainder he withdrew his intervention on his own motion.
*679 A short time after the institution of these suits, Broadwell brought two separate suits against Lane.
The first was for the purpose of obtaining possession of his plantation, and movable property thereto attached, on the ground of Lane’s failure to execute his part of the contract stated herein above ; in that suit the property attached by the creditors was sequestered.
Tiie other suit was for a debt due him by Lane, and under it were attached 11 mules, 500 bushels corn, and other movable property distinct from the property sequestered in Ills first suit.
Subsequently, he dismissed his first suit, and prosecuted the second to judgment, but released the eleven mules from his attachment.
In the meantime, the eleven creditors’ suits ripened into judgments, recognizing their attachments. In execution of their judgments, the movable property previously attached was seized and offered for sale, whereupon, Broadwell filed the present suit, for the purpose of asserting his ownership of the projierty seized, and of enjoining the sale thereof as the property of Lane.
Defendants excepted in substance :
1. That Broadwell was estopped from urging his ownership to the property under seizure, by his judicial admission or averments in his attachment suit, under which he had attached this identical property as belonging to Lane.
2. That as to Broadwell, the various judgments renderedin favor of Lane’s creditors, and sustaining their attachment of this property, had the force of the thing adjudged, and were binding on him, by reason of his intervention in said suits.
The exceptions having been referred to the merits, they defended under the general denial, coupled with the special averments that Lane was the owner of the property under seizure, and on trial, judgment was rendered in their favor.
As we are not informed by the District Judge on what grounds lie rested his judgment, we are left in the dark as to what disposition he made of defendant’s exceptions, and are left without the means of even conjecturing which of the multifarious defenses prevailed in the ■opinion of the Court. Hence, we shall proceed to review them all.
1. The first ground of exception urged by the defendants is easily disposed of, by referring to the record, which shows that the items of property attached by Broadwell, in his second suit, are totally different and distinct from those involved in the present controversy; which ■were sequestered in his first suit, in which he described and claimed-them as Ms property. Hence, his pleas are perfectly consistent, and no averment or statement, in either of his two suits against Lane, can, in *680 the slightest degree, militate against the rights which he seeks to enforce in this suit.
2. As no one of his interventions in the creditors’ attachment suits was ever tried on the merits, hut as they were all disposed of either on exception, or on his own motion of dismissal, the issues presented therein cannot he said to have been finally adjudicated, and hence, the judgment rendered in favor of each creditor cannot he held to he res judicata as to Broadwell.
We, therefore, now reach the question of the ownership of the property under seizure.
The evidence shows that the items of property claimed hy him, were placed hy him as appurtenances attached to the plantation which he placed in the possession of Lane in 1873, and lienee it is clear that the ownership of these things must follow the ownership of theimmovahle or plantation to which they were attached ; and in this connection we note that 'the seizure of the better part of that property, working animals and implements of husbandry, separately from the land to which they were attached, was tolerated in the teeth of a positive prohibitory law. C. P. 645.
This brings us to the consideration of the nature of the contract, under which Lane obtained possession of the plantation in January, 1873.
The mere reading of the instrument, which we have transcribed in the first part of this opinion, is conclusive on our minds, that this was not a sale, but a mere conditional promise to sell.
The first, part of the agreement seems to convey the idea of a sale, hut the reference to the titles, which are to he made at a future time, shows clearly that the contract was not translative of property, and did not operate a mutation of title.
This conclusion is fortified and crystallized into certainty hy the uncontradicted testimony of Broadwell, explaining the intent of the parties under the private agreement referred to in the instrument, and quoted in our statement of facts.
Throughout the record, it appears that such -was the interpretation given to the contract hy the two contracting parties themselves, and such was the evident understanding of the defendants themselves, as evidenced hy their failure to seize the plantation itself as the property of their more than insolvent debtor.
We, therefore, construe the contract between Broadwell and Lane, as a promise to sell the plantation and appurtenances, under certain conditions which were never fulfilled hy Lane, hy reason whereof, the sale was never perfected, and the property, which was the subject *681 matter of the contract, never changed ownership. Knox vs. Payne & Harrison, 13 A. 361; Garrett vs. Crooks, 15 A. 483.
Our conclusion is, that there is error in the unexplained judgment of the lower court, whether it was intended to rest on tlie exceptions or on the merits of this case.
It is, therefore, ordered, that the judgment of tlie District Court be annulled, avoided and reversed; and it is now ordered, adjudged and decreed, that there be judgment in favor of plaintiff, recognizing him as tlie lawful owner of the following items of property, seized as the property of L. N. Lane, to-wit: Ten mules, one sorrel horse, named Ajax, thirty head of cattle, seventy head of sheep, seed of (180) one hundred and eighty bales of cotton, fifteen plows, fifteen sweeps, ten bull-tongues, ten barrows, two carts, and four wagons, and that the injunction restraining the sale in execution of said property in defendants’ judgments against L. N. Lane, he made perpetual, at the costs of defendants in both Courts.
Justice Levy is recused in this case, having been of counsel.